14897

WELLS v. SALVATION ARMY OF GEORGIA *ET AL.*

(3 S. E. (2d), 601)

*Mr. B. F. Martin,* for appellants,

*Messrs. Price & Poag,* for respondent Salvation Army,

June 13, 1939.

The opinion of the Court was delivered by MR. E. C. DENNIS, ACTING ASSOCIATE JUSTICE.

This action was brought for the purpose of having the Court construe Item 4 of the will of the late Colonel M. L. Donaldson of Greenville. The item under consideration is as follows: "After the above and foregoing special legacies have been paid, I will and bequeath that the following special legacies be paid, to-wit: To Connie Maxwell Orphanage now located at Greenwood, S. C., the sum of One Thousand Dollars; To the Salvation Army Hospital, now in Greenville, S. C., to be used in the support and maintenance of said Hospital the sum of One Thousand Dollars; for the erection of a suitable monument for myself and my wife Margaret Louise Donaldson on our cemetery lot and for the upkeep of our said lot in Springwood Cemetery the sum of Two Thousand Dollars."

The particular item is as to the words: "To the Salvation Army Hospital now in Greenville, S. C., to be used in the support and maintenance of said Hospital, the sum of One Thousand Dollars."

In order to understand the questions involved, the following facts are undisputed: Colonel M. L. Donaldson died on September 9, 1924. Mrs. M. L. Donaldson died on June 5,

1930. A. H. Wells was appointed administrator, c.t.a. on June 25, 1930. He brought this action on January 12, 1937, and died soon after, whereupon E. E. Wells was substituted as administrator. Quoting from the report of the Master:

"It appears that in January, 1921, the Salvation Army opened and dedicated a hospital in Greenville, S. C., known as the Emma Moss Booth Memorial Hospital, construction of which had been commenced during the year 1920. The Salvation Army was a corporation existing under the laws of the State of New York. The Emma Moss Booth Memorial Hospital was never incorporated and had no existence outside of the Salvation Army. In other words, it was not a legal entity but was a hospital owned and operated entirely by the Salvation Army. It also appears that the hospital was commonly known in Greenville as 'The Salvation Army Hospital.' Prior to the construction and operation of this hospital, the Salvation Army had maintained a place in Greenville known as 'The Rescue Home'. This institution was devoted to the care and attention of unfortunate girls approaching motherhood and who were objects of charity, because of inability to pay for their care and treatment. When the Emma Moss Booth Memorial Hospital was opened, the rescue work of the Salvation Army was transferred to the hospital."

\* \* \*

"Since its opening in January, 1921, the Emma Moss Booth Memorial Hospital had been operated continuously by the Salvation Army. It was in full operation at the time of the execution of Colonel Donaldson's will, to-wit: April 15, 1922; at his death in September, 1924; at the death of Mrs. Donaldson on June 5, 1930, and up until about September 1, 1931. The undisputed evidence before me shows that during most of this time the general Salvation Army was operating the hospital at a heavy loss. As above stated, the evidence shows that the hospital continued to be operated until about September 1, 1931, approximately fifteen (15)

months after the death of Mrs. Donaldson. The evidence shows that during the first five (5) months of 1931 the hospital was operated at a loss of around $5,779.24. The total deficit of the hospital from 1925 to the date of its closing was $45,881.97. All of these losses were borne by the Salvation Army."

The will of Colonel Donaldson gave to his wife a life estate in all of the property, therefore the legacy provided for in Item 4 in his will could not become payable until the death of Mrs. Donaldson on June 5, 1930. Until 1927 the Salvation Army of New York, a corporation, operated the hospital. In the year 1927, the Salvation Army of Georgia was incorporated and a deed made to it by the Salvation Army of New York, and the Georgia corporation continued to operate the hospital in the same way until September, 1931, when the hospital was closed.

On January 27, 1932, the Salvation Army of Georgia conveyed the hospital, real estate, buildings and certain equipment to The Sisters of the Poor of Saint Francis, Ohio corporation.

There does not appear from the record any reason why the legacy of $1,000.00 was not paid to the Salvation Army at once upon the death of Mrs. Donaldson as there were ample funds on hand from which this legacy could have been paid and apparently the only reason for not paying this legacy was for the convenience of the estate and not from any lack of funds.

The Master finds that counsel for all the parties agree that the Salvation Army was the real legatee and he finds that the Salvation Army was the real legatee whether this admission had been made by the present owners of the hospital, that is, The Sisters of the Poor of Saint Francis.

The contest in this matter is between the Salvation Army and the Sisters of the Poor of Saint Francis. Counsel for the Salvation Army claim that their client is entitled to the payment of this money. Counsel for the Sisters of the Poor

of Saint Francis claim that under Item four of the will of Colonel Donaldson a trust was set up for the use of this money for the hospital now owned by them and therefore, that they should be paid this money for the benefit of the operation of the hospital. The hospital is now operated as a general hospital and is not operated especially for the assistance of wayward young women as was the case when the hospital was operated by the Salvation Army. However, the Salvation Army continues its work for such cause in Greenville, but sends its patients to its hospital in Durham, N. C. As one of his conclusions of law, the Master made the following finding:

"Considering all of the circumstances of this case I am convinced that Colonel Donaldson intended for the legacy of One Thousand ($1,000.00) Dollars to go to the Salvation Army and I am equally satisfied that he never had the slightest intention for it to go to the Sisters of the Poor of Saint Francis, who were utter strangers to him and whom he did not know in the slightest.

"That question being out of the way I will take up the question of when the legacy of $1,000.00 vested.

"Here again I am assisted by an apparent accord between both counsel and outside of this agreement I am satisfied that the legacy vested immediately upon the death of Mrs. Donaldson, the life tenant. This was on June 5, 1930. In other words, the legacy became vested in the Salvation Army immediately after the death of Mrs. Donaldson on June 5, 1930. The legacy is an absolute gift, there being nothing to indicate that it was the testator's intention for the $1,000.00 to be kept intact merely permitting the use of the interest. The words are susceptible of one meaning only and that is that the Salvation Army could take the money and use it as it saw fit 'in the support and maintenance of said hospital.' The evidence shows that the Salvation Army was sadly in need of the money at the time the legacy was payable and could have used it by applying it on the large deficit which

continually resulted from the operation of the hospital. Instead of being able to use the $1,000.00 given to it by Colonel Donaldson the Salvation Army apparently used its own funds in the place thereof. I find no difficulty in holding that the $1,000.00 legacy became absolutely vested in the Salvation Army on June 6, 1930, fully fifteen (15) months before the closing of the hospital.

"I do not agree with counsel for the Sisters of the Poor of Saint Francis that a trust was created, that is, in the sense in which the term is ordinarily used. It is true that the Salvation Army would have been required to use the money in the support and maintenance of the hospital but the method of using the same was left entirely to the discretion of the Salvation Army. It was an absolute gift of $1,000.00 and was a gift to the Salvation Army and under the circumstances of the case I could not possibly conclude that Colonel Donaldson ever intended for the money to go to the Sisters of the Poor of Saint Francis, an organization in whom he had no interest and knew nothing about."

In a brief order Judge Johnson confirmed the report of the Master and made it the order of the Court and authorized the Master, in whose hands the money had been placed, to pay it to the Salvation Army.

From this order the Sisters of the Poor of Saint Francis appealed to this Court.

There are a number of exceptions urged by appellant based on the alleged admission in evidence of certain statements with reference to Colonel Donaldson's regard for the Salvation Army, and his bias against the Roman Catholics. The Master stated in his report that he did not consider the testimony with reference to the attitude of Colonel Donaldson to the Roman Catholic Church, and therefore it is unnecessary for this Court to consider these exceptions. With reference to the testimony as to testator's attitude towards the Salvation Army and its work, the testimony was competent and all exceptions referring to the admission of testimony are overruled.

Counsel for appellant has filed an elaborate and very able argument undertaking to show that a trust was created by Colonel Donaldson in Item four of his will. That the Salvation Army of New York was the first trustee; that the Salvation Army of Georgia was the second trustee; and that the present owners of the hospital are trustees under this will and that the money should be paid to them for the maintenance of the hospital now in operation.

This is based upon the theory that the trust came to the present owner of the hospital by reason of the deed from the Salvation Army of Georgia to it. A deed to real estate would not include personalty unless the personalty was expressly mentioned, which is not the case in this deed.

The findings of the Master, approved by the Circuit Judge, are so well supported by authorities that it would serve no useful purpose to enter into a lengthy discussion of this question and therefore all exceptions relating to it are overruled. The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.